UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

SHAWNN TEKALU MAYBERRY,

                      Petitioner,               Case No. 2:19-cv-12

v.                                    Honorable Gordon J. Quist

CONNIE HORTON,

                      Respondent.

_____/

## REPORT AND RECOMMENDATION

        This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Shawnn Tekalu Mayberry is incarcerated with the Michigan Department of Corrections at the Chippewa Correctional Facility (URF) in Chippewa County, Michigan.  Following a five-day jury trial in the Kent County Circuit Court, Petitioner was convicted of armed robbery in violation of Mich. Comp. Laws § 750.529.  On December 17, 2015, the court sentenced Petitioner as a fourth habitual offender, Mich. Comp. Laws § 769.12, to a prison term of 35 years to 52 years, 6 months.

        On January 16, 2019, Petitioner filed his habeas corpus petition raising four grounds for relief, as follows:

    I.      The state trial court admitted irrelevant and highly prejudicial other-acts evidence, in violation of the Due Process Clause of the Fourteenth Amendment.

    II.     Trial counsel was constitutionally ineffective.

    III.    The admission of statements of a non-testifying witness violated the Confrontation Clause of the Sixth Amendment.

IV.    The evidence is insufficient to sustain the conviction, violating the Due Process Clause of the Fourteenth Amendment.

(Pet., ECF No. 1, PageID.7-11.)  Respondent has filed an answer to the petition (ECF No. 7) stating that the grounds should be denied because they are non-cognizable or meritless.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are meritless.  Accordingly, I recommend that the petition be denied.

## Discussion

## I.    Factual allegations

The facts underlying Petitioner's conviction were set out by the Michigan Court of Appeals as follows:

At 2:43 a.m. on July 8, 2014, a man carrying a gun and wearing a nylon mask, black hoodie, dark pants, and light gloves entered a Shell gas station at 2600 East Beltline in Grand Rapids.  The gas station was empty except for the clerk who was cleaning the bathroom.  The man gave the clerk a bag and ordered her to go to the cash register and empty it into the bag.  The clerk walked over to the register, and the man ducked behind the counter next to her.  Shortly thereafter, a customer walked into the gas station.  The clerk quickly emptied out the remaining contents of the cash register and handed the bag to the man, who took the bag and fled.  The clerk locked the door behind him and called 911.  Todd Wuis, a canine officer with the Grand Rapids Police Department (GRPD), responded with his tracking dog, Boris.  Boris tracked the man's scent to a parking lot.  Officer Wuis thought it likely that the man had gotten into a car and that was why Boris could no longer track his scent.

Six days later, on July 14, 2014, at 6:12 a.m., a Shell gas station in Norton Shores was robbed in a similar fashion to the one at 2600 East Beltline: the robber entered the gas station with a gun and wearing a mask, gloves, and a black hoodie over his head.  The robber walked up to where the clerk was, ordered the clerk to open the register and give him the money, went behind the register, grabbed some cigarettes, and put the money and cigarettes into a backpack.  While the robber was leaving, the clerk pulled a gun out from behind the counter and shot at the robber.  The robber quickly ran out the door and into a waiting vehicle, later identified as a 2010-2014 Hyundai Sonata.  While fleeing, the suspect lost a shoe.

Detective Kyle Neher with the Norton Shores Police Department was assigned to investigate the July 14 robbery.  After details of the investigation were reported in

the media, an Ottawa County Sheriff's deputy contacted Detective Neher.  The deputy reported to Detective Neher that at 4:24 a.m. on July 14, she stopped a 2013 black Hyundai Sonata with license plate number 459KXE.  The car's occupants, defendant and Elamin Muhammad, told the deputy that they intended to meet some women in Muskegon.

After hearing that a similar robbery had occurred in Grand Rapids, Detective Neher contacted Detective Chris Postma of the GRPD to see what information he had on defendant, Muhammad, and the license plate number of their vehicle.  Detective Postma ran the license plate through the Automatic License Plate Reader (ALPR), which is a database of vehicle locations based on license plate number collected by mounted cameras on select police cruisers throughout Grand Rapids.  The ALPR indicated that a vehicle with license plate number 459KXE was observed within one mile of the East Beltline gas station at 2:47 a.m. on July 8, 2014.  According to an employee from Enterprise Rent-a-Car, defendant rented a 2013 Hyundai Sona[]ta with license plate number 459KXE from July 5, 2014, until July 14, 2014.

Detective Tim DeVries of the GRPD was assigned to investigate the July 8 robbery of the gas station on East Beltline and coordinated his investigation with Detective Neher.  DeVries and Neher drafted affidavits to obtain search warrants.  A subsequent search of defendant's vehicle revealed a black hoodie, light gloves, and a black nylon do-rag.  A search of defendant's phone revealed a text conversation between defendant and Muhammad that occurred from July 12, 2014, through July 13, 2014, that seemed to indicate that the two were planning to do something that required a gun.

(Mich. Ct. App. Op., ECF No. 8-12, PageID.309-310.)  Petitioner acknowledges that the appellate court's factual summary is entitled to a presumption of correctness; but, he also contends that he has overcome that presumption with regard to certain facts.  (Pet'r's Reply Br., ECF No. 9, PageID.531.)  The jurors deliberated for about 90 minutes before finding Petitioner guilty of armed robbery.  (Trial Tr. V, ECF No. 8-10, PageID.304.)

Petitioner, with the assistance of counsel, appealed his conviction.  Petitioner filed two briefs.  In the first brief, filed with the assistance of counsel, Petitioner raised two issues, the same issues he raises as habeas issues I and IV.  (Pet'r's Appeal Br., ECF No. 8-12, PageID.341-363.)  In Petitioner's second brief, a *pro per* supplemental brief, Petitioner augmented the arguments his counsel raised regarding the issue identified as habeas issue I, and raised, for the first time, the issues identified as habeas issues II and III.  (Pet'r's Supp. Appeal Br., ECF No. 8-

12, PageID.391-445.)  Petitioner also filed a *pro per* motion to remand for an evidentiary hearing on the ineffective assistance of counsel claims he raised in his supplemental brief.  (Mot. to Remand, ECF No. 8-12, PageID.448-453.)  By order entered November 29, 2016, the court of appeals denied Petitioner's motion to remand. (Mich. Ct. App. Order, ECF No. 8-12, PageID.334.) Thereafter, by unpublished opinion issued April 18, 2017, the court of appeals denied relief, affirming the trial court with respect to all issues Petitioner raised.  (Mich. Ct. App. Op., ECF No. 8-12, PageID.309-317.)

Petitioner then filed a *pro per* application for leave to appeal in the Michigan Supreme Court raising the same issues he had raised in the court of appeals.  (Appl. for Leave to Appeal, ECF No. 8-13, PageID.457-505.)  By order entered December 20, 2017, the supreme court denied leave to appeal because the court was "not persuaded that the questions presented should be reviewed . . . ."  (Mich. Order, ECF No. 8-13, PageID.456.)

Petitioner did not file a petition for certiorari in the United States Supreme Court. Instead, he timely filed his habeas petition.

## II.     AEDPA standard

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court

proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their

adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

## III.    "Other acts" evidence

Petitioner contends that his due process rights were violated and his trial rendered unfair by the admission of prejudicial "other acts" evidence relating to robberies in 2005, the Norton Shores robbery a week after the East Beltline Shell robbery, and Petitioner falling asleep at work. The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67-68. Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Seymour*

*v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

Petitioner recognizes the limits of habeas jurisdiction and he is careful to cast his claim as a violation of due process.  For example, Petitioner contends that the admission of "other acts" evidence runs afoul of fundamental principles of justice and, therefore, violates due process, if the evidence is irrelevant.  Petitioner cites *Estelle* for that proposition; but, the *Estelle* Court made clear that it was not deciding that issue.  *Estelle*, 502 U.S. at 70 ("[W]e need not explore further the apparent assumption of the Court of Appeals that it is a violation of the due process guaranteed by the Fourteenth Amendment for evidence that is not relevant to be received in a criminal trial.").  The issue of "relevance," therefore, is only a state-law issue.  *See* Mich. R. Evid. 401.

Petitioner also contends that admission of evidence violates due process if the evidence demonstrates "bad character."  He cites the Michigan Supreme Court to support the contention.  (Pet'r's Br., ECF No. 2, PageID.39 (citing *People v. Crawford*, 582 N.W.2d 785, 789-791 (Mich. 1998)).)  But, the Sixth Circuit has concluded that the United States Supreme court has not adopted that position:

> The kind of foundational unfairness and arbitrariness needed to show that a flawed state court evidentiary ruling rises to the level of a due process violation is not a broad category, and the Supreme Court to our knowledge . . . has never identified an improper-character-evidence case that falls into it.

*Burger v. Woods*, 515 F. App'x 507, 510 (6th Cir. 2013).

Petitioner's specific arguments regarding relevance and "bad character" evidence fall within his general proposition that the "other acts" evidence admitted in his case violated his due process rights.  But, there is no Supreme Court precedent that holds that a state court violates the Due Process Clause by permitting propensity evidence in the form of other-bad-acts evidence.

7

In *Estelle v. McGuire*, the Supreme Court declined to hold that the admission of prior acts evidence violated due process. *Estelle*, 502 U.S. at 75. The Court stated in a footnote that, because it need not reach the issue, it expressed no opinion as to whether a state law would violate due process if it permitted the use of prior crimes evidence to show propensity to commit a charged crime. *Id.* at 75 n.5. While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms. The Sixth Circuit has found that "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329 F.3d at 512.

Therefore, Petitioner's broad proclamations that the admission of "other acts" evidence at his trial categorically violated due process finds no support in clearly established federal law. Because there is no Supreme Court authority supporting Petitioner's position, he cannot show that the state appellate court's rejection of his position is contrary to, or an unreasonable application of, clearly established federal law as required by 28 U.S.C. § 2254 (d)(1) and argued by Petitioner. (Pet'r's Br., ECF No. 2, PageID.50) ("[T]he state court's rejection of this claim was objectively unreasonable under Section 2254(d)(1).").

Petitioner, apparently recognizing that flaw, used his reply brief to refocus the argument, no longer relying principally on the claim that the appellate court's determination was contrary to clearly established federal law under § 2254(d)(1), but contending instead that the appellate court's adjudication of his claim was based on an unreasonable determination of the facts in light of the evidence, thereby warranting relief under § 2254(d)(2). (Pet'r's Reply Br., ECF No. 9, PageID.538) ("Even if this is not clearly-established Supreme Court precedent under

§ 2254(d)(1), AEDPA's standard of review is satisfied because the state court's adjudication of this claim involved an unreasonable determination of the facts under § 2254(d)(2).").  Petitioner's shift from the one circumstance that supports habeas relief to the other does not save his claim.

The specific factual determinations he identifies as unreasonable relate to text exchanges taken from Petitioner's phone and published to the jury through the testimony of witness DeVries.  (Trial Tr. IV, ECF No. 8-9, PageID.278-279.)  On the strength of that testimony, the court of appeals reported the following:

> A search of defendant's phone revealed a text conversation between defendant and Muhammad that occurred from  July 12, 2014, through July 13, 2014, that seemed to indicate that the two were planning to do something that required a gun. . . . [and] text messages between Muhammad and defendant indicated that the two were planning something involving a weapon in the days leading up to the Norton Shores robbery.

(Mich. Ct. App. Op., ECF No. 8-12, PageID.310, 314.)  Petitioner claims the text exchange does not support the court of appeals' statements; however, Petitioner is not reading the correct part of the transcript.  Petitioner refers to pages 46-47 of the November 5, 2015, trial transcript (Trial Tr. IV, ECF No. 8-9).  The specific exchanges to which the court of appeals refers appear at pages 50-53 of that transcript and plainly support the court's determinations.   Plaintiff § 2254(d)(2) challenge, therefore, is meritless.

The crux of Petitioner's challenge to the admission of evidence regarding the 2005 and Norton Shores robberies is that those robberies were not relevant because they were not sufficiently similar to the robbery at issue in his case to warrant admission of the other acts evidence.  The crux of Petitioner's challenge to the evidence that he was caught sleeping at work is also premised on his claim that such evidence was not relevant.  But, with regard to the sleeping at work evidence, Petitioner claims that the fact that he was caught shows that he was closely supervised, not the opposite as urged by the court of appeals.  Those challenges, however, rely

entirely on state authorities and bring up only state law issues: is the evidence relevant under Mich. R. Evid. 402, is it more probative than prejudicial under Mich. R. Evid. 403, and does the evidence relate to preparation, scheme, or plan—as opposed to just character or propensity—under Mich. R. Evid. 404.  The Michigan Court of Appeals concluded that state law permitted the admission of the evidence.

It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions.  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle*, 502 U.S. at 68.  The decision of the state courts on a state-law issue is binding on a federal court.  *See Johnson v. United States*, 559 U.S. 133, 138 (2010); *Wainwright v. Goode*, 464 U.S. 78, 84 (1983). The Sixth Circuit repeatedly has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'"  *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76).  *See also Thomas v. Stephenson*, 898 F.3d 693, 700 n.1 (6th Cir. 2018) (same).

To summarize, Petitioner has failed to show that the court of appeals' decision upholding the admission of other acts evidence is contrary to clearly established federal law because there is no clearly established federal law supporting his position.  Petitioner has failed to show that the court of appeals adjudication of his challenge to the admission of the evidence was based on an unreasonable determination of the facts because the record supports the appellate court's factual determinations.  And, finally, the true heart of Petitioner's challenge—that the "other acts" evidence was admitted in violation of the state rules of evidence—is not cognizable on habeas review.  Accordingly, Petitioner is not entitled to habeas relief on this issue.

## IV.    Confrontation Clause

Detective Kyle Neher testified at Petitioner's trial.  Detective Neher was responsible for investigating the July 14, 2014, robbery of the Shell gas station in Norton Shores.

10

After details of the Norton Shores robbery were reported, an Ottawa County Sheriff's deputy, Christie Wendt, informed Detective Neher that she had investigated a suspicious vehicle call the morning of the robbery and found Petitioner and Muhammad in a vehicle that matched the description of the vehicle used in the robbery.  Neher learned the license plate number from the deputy.  Neher researched Petitioner in the law enforcement database and discovered he resided in Grand Rapids.  He contacted Detective Postma of the Grand Rapids Police Department.  The detectives recognized similarities between the robberies.  Detective Postma ran the plate and discovered that Petitioner's car was in the vicinity of the Grand Rapids robbery site near the time of the robbery.

Petitioner contends that Detective Neher's testimony regarding the deputy's report violated Petitioner's rights under the Confrontation Clause.  The Confrontation Clause of the Sixth Amendment gives the accused the right "to be confronted with the witnesses against him."  U.S. Const. amend. VI; *Pointer v. Texas*, 380 U.S. 400, 403-05 (1965) (applying the guarantee to the states through the Fourteenth Amendment).  "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact."  *Maryland v. Craig*, 497 U.S. 836, 845 (1990).  The Confrontation Clause therefore prohibits the admission of an out-of-court testimonial statement at a criminal trial unless the witness is unavailable to testify and the defendant had a prior opportunity for cross-examination.  *Crawford v. Washington*, 541 U.S. 36, 59 (2004).

If the deputy's report, which placed Petitioner in a vehicle like that used in the Norton Shores robbery at a time and in a place proximate to that robbery, is a "testimonial statement," there is little doubt that it is exactly the type of statement that the Confrontation Clause

11

is intended to keep out of criminal trials. *Id*. at 42-50.  The Supreme Court declined "to spell out a comprehensive definition of 'testimonial.'"  *Id*. at 68 (footnote omitted).  Nonetheless, it has staked out the "perimeter" of the meaning of testimonial by reference to the dictionary definition:

> "The text of the Confrontation Clause reflects this focus [on testimonial hearsay]. It applies to 'witnesses' against the accused—in other words, those who 'bear testimony.'  1 N. Webster, An American Dictionary of the English Language (1828).  'Testimony,' in turn, is typically 'a solemn declaration or affirmation made for the purpose of establishing or proving some fact.' *Ibid*.  An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not."  541 U.S., at 51, 124 S.Ct. 1354.

*Davis v. Washington*, 547 U.S. 813, 823-24 (2006) (quoting *Crawford*).  The *Crawford* Court also referenced statements that were at their core testimonial, including "'pretrial statements that declarants would reasonably expect to be used prosecutorially . . . .'"  *Crawford*, 541 U.S. at 51; *see also Bullcoming v. New Mexico*, 564 U.S. 647, 659 n.6 (2011) ("To rank as 'testimonial,' a statement must have a 'primary purpose' of 'establish[ing] or prov[ing] past events potentially relevant to later criminal prosecution.'") (quoting *Davis*, 547 U.S. at 822).  A police report, where it is the sole source of information, i.e., identifying Petitioner and putting him in a particular location at a particular time with a particular destination that all match up to a crime, may be at the very core of that which is testimonial and certainly seems to be within the "testimonial" perimeter.

But, even testimonial statements do not run afoul of the Confrontation Clause if the statement is not offered to prove the truth of the matter asserted.  *Williams v. Illinois*, 567 U.S. 50, 57-58 (2012) ("[T]he Confrontation Clause . . . has no application to out-of-court statement that are not offered to prove the truth of the matter asserted.").  The Michigan Court of Appeals concluded that the deputy's report fell into that category:

> In this case, Detective Neher offered the information he received from the Ottawa Sheriff's deputy to explain why he proceeded with the investigation in the way that he did, not to prove the truth of the matter asserted.  Detective Neher did not testify that defendant and Muhammad were driving to Muskegon to prove that they were

going towards the location of the Norton Shores robbery.  Rather, it was offered to explain why the detective contacted GRPD; after running their names, Detective Neher saw that most of their contacts and residences were in Grand Rapids, not Muskegon, and Detective Neher was aware of similar robberies that occurred in Grand Rapids.  This, in turn, explained why the GRPD ran defendant's plates.  When they found that his vehicle was near the site of the July 8 robbery, it triggered the rest of the GRPD's investigation.  Accordingly, because Detective Neher's testimony was limited to showing why he proceeded in a certain direction with his investigation, it did not violate the Confrontation Clause.  See *Chambers*, 277 Mich App at 10-11; see also *Henry*, 305 Mich App at 154 ("Had [the detective] limited his testimony to an explanation that, on the basis of the information he received from the informant he proceeded in a certain direction with his investigation, it may have been admissible.").  As such, to the extent that defendant argues that defense counsel was ineffective for failing to object to the admission of these statements, that argument is also without merit because any objection would have been futile.  See *Unger*, 278 Mich App at 257.

(Mich. Ct. App. Op., ECF No. 13-10, PageID.515.)

The state appellate court's analysis is consistent with *Williams v. Illinois*.  Moreover, the court of appeals did not apply the standard inconsistently with federal law as clearly established by the United States Supreme Court.  Petitioner has not identified any cases the Supreme Court has decided differently on a set of materially indistinguishable facts.

Additionally, Sixth Circuit authority indicates that the line separating evidence that is offered to prove the truth of the matter asserted, on the one hand, from evidence that is not, on the other, is not always clear.  That is particularly so where the purpose offered for admitting the evidence is to show the jury background information or the course of the investigation of the crime.  Here, the court of appeals justified the admission of the deputy's report because it was not offered for the truth of the matter asserted, but to show how the police identified Petitioner as a suspect in the robbery investigation.  Although Sixth Circuit authority is not clearly established federal law for purposes of 28 U.S.C. § 2254, it does highlight the problem posed by such evidence.

In *United States v. Nelson*, 725 F.3d 615 (6th Cir. 2013), and *United States v. Hearn*, 500 F.3d 479 (6th Cir. 2007) the court addressed whether evidence in the form of out-of-

13

court informant statements was admitted for the truth of the matter asserted.  In *Nelson*, the issue

that came to the jury by way of out-of-court informant statements was that the defendant possessed

a gun.  There was no other evidence of that fact, other than circumstantial evidence.  No police

officer saw the defendant in possession of a gun.  The court concluded that the "gun possession"

detail of the informant's statement was not a necessary part of the "coherent narrative of the

investigation" to prevent the jury from becoming "confused about why officers were targeting a

particular individual."  *Nelson*, 725 F.3d at 621.  Similarly, in *Hearn*, the court concluded the out-

of-court informant statements put before the jury regarding the defendant's intention to distribute

ecstasy at a party went far beyond what was necessary to explain why police targeted the defendant

and was introduced by the government intentionally for the purpose of establishing elements of

the crime.  *Hearn*, 500 F.3d at 483-84.  In *United States v. Cromer*, 389 F.3d 662, 671-679 (6th

Cir. 2004), the court concluded that some of the informant's statements fell into the category of

background information—the address identified as a drug house—while others—specifically,

statements identifying the defendant by his nickname and physical description as a dealer of

cocaine—were used for the truth of the matter asserted.

In other cases, the Sixth Circuit has concluded the out-of-court statements were

properly admitted.  *See, e.g., United States v. Reynolds*, 684 F. App'x 510, 515 (2017) ("The

detective's statement at trial was not used by the government for its truth but rather as background

information to explain how and why law enforcement was investigating defendant."); *United

States v. Gibbs*, 506 F.3d 479, 486 (6th Cir. 2007) ("'In some circumstances, out of court

statements offered for the limited purpose of explaining why a government investigation was

undertaken have been determined not to be hearsay.'"); *United States v. Warman*, 578 F.3d 320,

346 (6th Cir. 2009) ("[E]vidence that is 'provided merely by way of background' or is offered only

to explain[] how certain events came to pass or why the officers took the actions they did,' is not offered for the truth of the matter asserted.") (citations omitted); *United States v. Napier*, 787 F. 3d 333, 348 (6th Cir. 2015) ("[The evidence] was offered for the limited purpose of showing the course of the agents' investigation . . . .").

In Petitioner's case, introduction of at least some of the information from the deputy's report was necessary to explain why police targeted Petitioner in their investigation of the Grand Rapids Shell station robbery.  But, the information in the report was not just important to connecting Petitioner to a vehicle that was near the Grand Rapids robbery, it was a critical link in connecting the evidence relating to both robberies.  It is almost impossible to ignore the importance of the very specific information in that report on determining Petitioner's connection to the criminal conduct alleged.

Under the circumstances presented here, there is a strong argument that the fine details of the deputy's report were admitted for the truth of the matter asserted.  But, that is not the standard for granting habeas relief.  Absent more specific guidance from the Supreme Court or a clearer line between evidence that is admissible because it is not offered for the truth of the matter asserted and evidence that is not admissible, Petitioner has failed to show that the Michigan Court of Appeal's rejection of his Confrontation Clause argument is contrary to, or an unreasonable application of, clearly established federal law.

Moreover, even if the admission of the deputy's report ran afoul of the Sixth Circuit authority, and even if that authority constituted clearly established federal law, Petitioner would not be entitled to habeas relief because the information in the deputy's report was not made known to the jury solely through the deputy's report.  During a recorded police interview that was played for the jury, Petitioner was questioned at length regarding the information contained in the deputy's

15

report.  He acknowledged the truth of all of the information contained in the report.  Thus, Detective Neher's testimony regarding the content of the report was entirely cumulative of information the jury would hear directly from Petitioner in the recorded interview.

For reasons of finality, comity, and federalism, habeas petitioners "are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *United States v. Lane*, 474 U.S. 438, 449 (1986)).  Under this test, relief is proper only if the federal court has "grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict.'"  *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995).  There must be more than a "reasonable possibility" that the error was harmful.  *Brecht*, 507 at 637 (internal quotation marks omitted).  The *Brecht* standard reflects the view that a "State is not to be put to th[e] arduous task [of retrying a defendant] based on mere speculation that the defendant was prejudiced by trial error; the court must find that the defendant was actually prejudiced by the error."  *Calderon v. Coleman*, 525 U.S. 141, 146 (1998) (per curiam).  Petitioner cannot show prejudice because the deputy's report was cumulative of Petitioner's interview responses.

For all of these reasons, Petitioner has failed to show that the appellate court's rejection of his Confrontation Clause claim is contrary to, or an unreasonable application of, clearly established federal law.  Accordingly, he is not entitled to habeas relief on the claim.

## V.    Sufficiency of the evidence

Petitioner contends the prosecutor failed to introduce sufficient evidence that Petitioner was involved in the East Beltline Shell station robbery.  The Michigan Court of Appeals rejected Petitioner's claim, applying the following standard:

> To determine whether the prosecution presented sufficient evidence to sustain a conviction, "a court must view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that

16

the essential elements of the crime were proven beyond a reasonable doubt." *Id*. at 515. But appellate courts are not juries and must not interfere with the jury's role as the sole factfinder based of the jury's determination of the credibility of witnesses and the weight to be given the evidence. *Id*. at 514-515. "[T]he trier of fact, not the appellate court, . . . determine[s] what inferences may be fairly drawn from the evidence and . . . the weight to be accorded those inferences." *Hardiman*, 466 Mich at 428. This review standard applies equally to direct and circumstantial evidence, which may sufficiently prove any element of the crime. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

(Mich. Ct. App. Op., ECF No. 8-12, PageID.314.)

Although the court of appeals relied on state authority, the standard it applied is functionally identical to the federal habeas standard. A § 2254 challenge to the sufficiency of the evidence is governed by *Jackson v. Virginia*, 443 U.S. 307 (1979). The habeas court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988). The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.

Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the

Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA."

*Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). This standard erects "'a nearly

insurmountable hurdle'" for petitioners who seek habeas relief on sufficiency-of-the-evidence

grounds. *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2008) (quoting *United States v. Oros*, 578

F.3d 703, 710 (7th Cir. 2009)).

   The court of appeals concluded that the evidence was sufficient to support

Petitioner's conviction for armed robbery:

> Here, defendant does not contest that the elements of armed robbery were satisfied. Rather, defendant contends that the prosecution failed to reasonably prove that *he* committed the armed robbery. "[I]t is well settled that identity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). The prosecution's theory of the case was that defendant was guilty of the crime either as the principle or as an aider and abettor. Under MCL 767.39, "[e]very person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense." This statute "does not create a distinct crime; rather, it allows an aider and abetter to be convicted of, for example, armed robbery, even though that person did not hold the gun or take the money." *People v Greaux*, 461 Mich 339, 344-345; 604 NW2d 327 (2000).
>
> Sufficient evidence was presented at trial to convict defendant of armed robbery under, at the very least, an aiding and abetting theory. Evidence was presented that defendant rented a 2013 Hyundai Sonata with license plate number 459KXE from July 5, 2014, until July 14, 2014. On July 8, 2014, a vehicle with license plate number 459KXE was observed approximately ¾ of a mile from the Shell station just a few minutes after the station was robbed at gunpoint. The robber of the Shell station was dressed in all black with a hoodie and a black nylon mask. When the police searched defendant's car, they found a black hoodie and a black do-rag. Defendant had previously been suspected of an armed robbery, and, in that case, when the police stopped defendant and searched his car, they also found clothing that matched the clothing worn by the robber. Defendant was also suspected of being involved in the July 2014 armed robbery in Norton Shores as previously discussed. While defendant is correct that none of this evidence directly places defendant at the scene of the July 8, 2014 armed robbery, "the prosecution need not negate every reasonable theory consistent with the defendant's innocence, but need merely introduce evidence sufficient to convince a reasonable jury in the face of whatever contradictory evidence the defendant may provide." *Hardiman*, 466 Mich at 424 (citation omitted). So, based on the evidence presented in this case, we conclude there was sufficient circumstantial evidence for a rational trier of fact

to find defendant guilty beyond a reasonable doubt of, at the very least, aiding and abetting the July 8, 2014 armed robbery. *Wolfe*, 440 Mich at 515.

(Mich. Ct. App. Op., ECF No. 8-12, PageID.314-315.)

Petitioner contends that the evidence identified by the court of appeals is simply not enough to offer the "near certitude of guilt" necessary to warrant conviction. (Pet'r's Br., ECF No. 2, PageID.67.)  Moreover, Petitioner contends that the court of appeals analysis necessarily fails because it is based on evidence of other bad acts which was not properly admitted. (*Id.*, PageID.68); *see also* § III above.

Petitioner does not dispute that the record includes the evidence that the court of appeals found to be sufficient:  the vehicle that Petitioner rented was in close proximity to the gas station shortly after the robbery; the vehicle Petitioner was driving when he was questioned contained clothing matching the description of the clothing worn by the robbery; Petitioner's phone included texts that suggest his involvement in criminal activity; Petitioner and his vehicle were in close proximity to a robbery in Muskegon that involved a vehicle matching the description of Petitioner's vehicle; and Petitioner's alibi did not preclude his participation in the gas station robbery.  Petitioner claims, however, that the evidence does not support the inference that he is guilty.

Certainly, much of the evidence was circumstantial.  However, the Supreme Court has "never questioned the sufficiency of circumstantial evidence in support of a criminal conviction, even though proof beyond a reasonable doubt is required."  *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003).  "And juries are routinely instructed that '[t]he law makes no distinction between the weight or value to be given to either direct or circumstantial evidence.'"  *Id.* (alteration in original) (quoting 1A Kevin F. O'Malley, Jay E. Grenig & William C. Lee, *Federal Jury Practice and Instructions: Criminal* § 12.04 (5th ed. 2000)).

19

The court of appeals, considering the entire record, held that the identified facts supported the reasonable inference that Petitioner had at the very least aided and abetted the robbery.  The jury would be free to draw that inference, if it is a reasonable one.  In *Coleman v. Johnson*, 566 U.S. 650 (2012), the Supreme Court provided guidance "in determining what distinguishes a reasoned inference from 'mere speculation.'"  *Id*. at 655.  The Court described a reasonable inference as an inference that a rational jury could make from the facts.  The inference need not be compelled by those facts; it must simply be rational.  *Id*. at 656.  As a result, to succeed in his challenge, Petitioner must show that the inference identified by the court of appeals is irrational.

Petitioner has not made that showing.  Certainly, the inference singled out by the court of appeals—that Petitioner at least aided and abetted the robbery, even if he did not commit it—could rationally flow from the totality of the underlying facts.  His argument that other inferences might follow from the evidence—inferences that favor him—is immaterial.  Petitioner has not identified any United States Supreme Court case that resolves the issue differently on a set of materially indistinguishable facts.  Moreover, he has failed to overcome the double deference owed to the state-court's application of the facts to the *Jackson* standard on habeas review.  *Tucker*, 541 F.3d at 656.  Accordingly, Petitioner is not entitled to habeas relief on his sufficiency-of-the-evidence claim.

## VI.     Ineffective assistance of counsel

Petitioner also argues that his counsel rendered constitutionally ineffective assistance because: (A) counsel failed to investigate and obtain the surveillance video from Petitioner's workplace that Petitioner contends would support his presence at work when the charged robbery occurred; (B) counsel did not develop Petitioner's alibi defense by calling or effectively examining witnesses Patrick Withorn, Shelly Cox, Dan Wilcox, and Orlando Vance;

(C) counsel failed to object to the Confrontation Clause violation; and (D) counsel failed to object to the evidence that Petitioner slept on the job.

The court of appeals rejected each of Petitioner's claims, applying the following standard:

> To establish ineffective assistance of counsel, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v Washington*, 466 US 668, 688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). A defendant must overcome a strong presumption that counsel employed sound trial strategy. *Id*. at 689; *Trakhtenberg*, 493 Mich at 52. Thus, effective assistance of counsel is presumed, and a defendant bears a heavy burden of proving otherwise. *People v McGhee*, 268 Mich App 600, 625; 709 NW2d 595 (2005).

(Mich. Ct. App. Op., ECF No. 8-12, PageID.316.) Once again, although the appellate court relied in part on state authority, the standard it applied is the same standard this Court applies on habeas review.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light

21

of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011).  In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

A.     **Failure to investigate the surveillance video**

Petitioner contends that his counsel was ineffective because he failed to investigate security video taken at Petitioner's workplace on the night of the robbery.  The court of appeals disagreed:

> Detective DeVries testified at defendant's preliminary examination that the surveillance videos did not provide any insight into the investigation.  Defendant has presented no evidence other than his assertions that the surveillance video would have proved that he was at his work at the time of the robbery.  Without anything to substantiate defendant's assertions, defendant cannot establish counsel's decisions regarding what evidence to present were not sound trial strategy, *Trakhtenberg*, 493 Mich at 52, and this Court will not substitute its judgment for that of counsel regarding matters of trial strategy, *Davis*, 250 Mich App at 368.  As such, because defendant provided nothing beyond his assertions regarding the surveillance video, defense counsel was not ineffective in failing to present this evidence. See *Meissner*, 294 Mich App at 460.

(Mich. Ct. App. Op., ECF No. 8-12, PageID.317.)  Essentially, the state court determined that the only evidence in the record regarding the content of the video was Detective DeVries's statement that the surveillance video, in the court's words, "did not provide any insight into the investigation."  (*Id.*)  Petitioner complains that the court misreads DeVries's testimony.  Petitioner reports that DeVries actually testified that "there aren't any [surveillance videos] that we'd be interested in."  (Pet'r's Br., ECF No. 2, PageID.53) (quoting Prelim. Exam. Hr'g Tr., ECF No. 8-2, PageID.175).  Petitioner posits that DeVries might not have been "interested in" videos that established Petitioner's innocence.

Petitioner's speculation that the video might have been favorable to him is not sufficient to show that counsel acted in a professionally unreasonable manner by failing to obtain any video or to show that Petitioner suffered prejudice as a result of counsel's failure.  "A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim."  *United States v. Ashimi*, 932 F.2d 643, 650 (6th Cir. 1991) (footnote omitted); *see also Williams v. Bauman*, No. 16-2374, 2017 WL 4546637, at *3 (6th Cir. May 1, 2017) ("[Petitioner offers only speculation and tendentious inferences to suggest any potential value for the defense from the police-cruiser video . . . ."); *Caruthers v. United States*, No. 3:07-0635, 2008 WL 413631, at *3 (M.D. Tenn. Feb. 12, 2008) ("Petitioner has made absolutely no showing that there were, in fact, video surveillance cameras nearby, let alone that any such cameras captured the events on the night in question and that they would have somehow exonerated Petitioner.").  Accordingly, Petitioner has failed to demonstrate that the court of appeals rejection of his ineffective assistance claim regarding the surveillance video is contrary to, or an unreasonable application of, clearly established federal law; and, he is not entitled to habeas relief on that claim.

**B.      Failure to call or effectively obtain testimony from alibi witnesses**

Petitioner next complains that counsel failed to properly develop the alibi testimony of witness Shelly Cox and entirely failed to call three other witnesses whom Petitioner contends would have established Petitioner's presence at work at the time of the robbery.  The court of appeals was not convinced:

> In this case, defendant argues that defense counsel's failure to investigate and call four witnesses deprived him of his alibi defense because the witnesses could have testified that defendant was working the night of the robbery.  But it was uncontested at trial that defendant was at work on the night of the robbery.  The prosecution's theory at trial was that defendant left work, committed the robbery, and then returned to work.  Therefore, the only way that these witnesses could have provided testimony of a substantial defense was if they could have testified that they were with defendant at the time of the robbery.
>
> Defendant only claims that one of the four witnesses could have confirmed that he was at work at the time of the robbery.  According to defendant, he had a conversation with this coworker during his break on the night of the robbery, thereby proving that he did not leave the premises and commit the robbery.  But this witness, Shelly Cox, was called and testified at defendant's trial.  Specifically, Cox testified that he was unsure whether he had any conversation with defendant on July 8, the night of the robbery.  Therefore, based on the record, further testimony from Cox could not have established a substantial defense.

(Mich. Ct. App. Op., ECF No. 8-12, PageID.317.)

Once again, Petitioner offers nothing more than his own self-serving statement as to what these witnesses would have said.  That sort of speculation is not enough to show that counsel was professionally unreasonable or that Petitioner suffered prejudice as a result.  *Ashimi*, 932 F.2d at 650. [1]  Moreover, even the testimony Petitioner claims counsel should have obtained

---

[1] *See also Pillette v. Berghuis*, 408 F. App'x 873, 887 (6th Cir. 2010) ("The salient point is that nobody knows what she would have said.  Speculation cannot suffice to establish the requisite prejudice."); *Neverson v. Farquharson*, 366 F.3d 32, 45 (1st Cir. 2004) ("[H]e has not offered any evidence of what that person would have said, let alone shown that the lack of such testimony materially prejudiced his defense."); *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298 (3rd Cir. 1991) ("Zettlemoyer cannot meet his burden . . . based on vague and conclusory allegations that some unspecified and speculative testimony might have established his defense."); *Goins v. Warden, Perry Corr. Inst.*, 576 F. App'x 167, 173 (4th Cir. 2014) ("[Petitioner's] failure to [show] what an expert witness would have testified regarding the mental health evidence . . . reduces any claim of prejudice to mere speculation and is fatal to his claim."); *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) ("[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must . . . set out the content of the witness's proposed testimony, and show that

was not persuasive or exonerating.  On the last day of trial, Petitioner detailed the testimony he

had hoped counsel would elicit from the witnesses.  (Trial Tr. V, ECF No. 8-10, PageID.289-291.)

His explanation was convoluted, at best.  Petitioner claimed that he had casual conversations with

one or more of the witnesses while he was on break on the date of the robbery and that they would

remember the conversations and the date because during the conversation he specifically related

the date of the conversation to the date of an event they would remember, i.e., on the date of the

conversation, Petitioner told the witness that the witness's upcoming court hearing was in six days.

(*Id.*)  Counsel attempted to refresh witness Cox's recollection with questions along those lines, to

no avail.  (Trial Tr. IV, ECF No. 8-9, PageID.267-270.)

   Petitioner has failed to show that the court of appeals rejection of his ineffective

assistance claim regarding the alibi witnesses is contrary to, or an unreasonable application of,

clearly established federal law.  Thus, he is not entitled to habeas relief on that claim.

### C. Failure to object to the Confrontation Clause violation

   Petitioner complains that counsel should have objected to the introduction of the

deputy's report as violative of the Confrontation Clause.  The court of appeals rejected that claim

"because any objection would have been futile."  (Mich. Ct. App. Op., ECF No. 8-12, PageID.316.)

The state court's conclusion that counsel is not required to raise meritless or futile objections to

effectively assist his client is certainly consistent with the law of this circuit, *see, e.g., Richardson*

---

the testimony would have been favorable to a particular defense."); *Patel v. United States*, 19 F.3d 1231, 1237 (7th Cir. 1994) ("Where a petitioner claims his trial counsel failed to call a witness, he must make a specific, affirmative showing as to what the missing evidence would have been, and prove that this witness's testimony would have produced a different result.") (internal citations omitted); *United States v. Vazquez-Garcia*, 211 F. App'x 544, 546 (8th Cir. 2007) ("Recognizing the deferential standard when reviewing the conduct of counsel, we decline to find prejudice in this situation when there is no evidence other than speculation to support the finding."); *Smith v. Adams*, 506 F. App'x 561, 565 (9th Cir. 2013) ("Smith merely speculates as to the expert testimony that could have been produced, but '[s]peculation about what an expert could have said is not enough to establish prejudice.'"); *Sullivan v. DeLoach*, 459 F.3d 1097, 1109 (11th Cir. 2006) ("This prejudice burden is heavy where the petitioner alleges ineffective assistance in failing to call a witness because 'often allegations of what a witness would have testified to are largely speculative.'").

*v. Palmer*, 941 F.3d 838, 857 (6th Cir. 2019) ("[D]efense counsel cannot be deemed ineffective for failing to make an argument that would have been futile."), and is not inconsistent with clearly established federal law.  Indeed, it defies logic to suggest that reasonable professional conduct requires counsel to raise arguments that the state court identified as meritless.

Moreover, the determination that any error was harmless under *Brecht* necessarily means that it is not prejudicial under *Strickland*.  *See Kyles v. Whitley*, 514 U.S. 419, 436 (1995) (explaining that the *United States v. Agurs*, 427 U.S. 97 (1976), materiality standard, later adopted as the prejudice standard for ineffective assistance of counsel claims, requires the habeas petitioner to make a greater showing of harm than is necessary to overcome the harmless error test of *Brecht*); *see also Wright v. Burt*, 665 F. App'x 403, 410 (6th Cir. 2016) ("[O]ur previous analysis of *Strickland* prejudice applies to the assessment of whether the Confrontation Clause violation was harmless error under *Brecht*."); *Bell v. Hurley*, 97 F. App'x 11, 17 (6th Cir. 2004) ("Because we find the error to be harmless [under *Brecht*] Bell cannot meet the prejudice requirement of *Strickland* . . . ."); *Kelly v. McKee*, No. 16-1572, 2017 WL 2831019 at *8 (6th Cir. Jan. 24, 2017) ("Because Kelly suffered harmless error [under *Brecht*] at best, he cannot establish that he suffered prejudice [under *Strickland*].").  Given this Court's finding that any Confrontation Clause violation was harmless error, counsel's failure to object could not be prejudicial.  As a consequence, Petitioner cannot demonstrate entitlement to habeas relief on this claim.

### D.   Failure to object to evidence of sleeping on the job

Finally, Petitioner contends that his counsel was ineffective for failing to object to evidence that Petitioner was literally sleeping on the job.  As noted above in § III, Petitioner argued that the evidence he was sleeping on the job was inadmissible for four distinct reasons: first, he argued the evidence was inadmissible as a "prior bad act" under Michigan Rule of Evidence 404(b); second, he argued that the evidence was inadmissible because it was irrelevant under

Michigan Rule of Evidence 402; third, he argued the evidence was inadmissible as character evidence under Michigan Rule of Evidence 404(a); and, fourth, he argued the evidence was inadmissible under Michigan Rule of Evidence 403 because it was more prejudicial than probative. The court of appeals rejected all four arguments:

> First, defendant argues that the evidence was inadmissible under MRE 404(b). But the prosecution did not admit evidence of defendant's sleeping at work to show that on the night of the robbery, defendant fell asleep at work. Because this evidence was not presented to show that defendant acted in conformity, it is not barred under MRE 404(b). See MRE 404(b)(1).
>
> Next, defendant argues that this evidence was inadmissible because it was irrelevant. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Evidence is relevant if it is material and probative. *Crawford*, 458 Mich at 388. "Materiality is the requirement that the proffered evidence be related to 'any fact that is of consequence' to the action." *Id*. Evidence is probative when it "tends 'to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Id*. at 389-390.
>
> Before trial, defendant submitted a notice that he intended to present evidence of an alibi that he was working when the armed robbery occurred. In defense counsel's opening statement, he reiterated several times that defendant's alibi was premised on the fact that he was well supervised at work and would not have been able to leave unnoticed. The prosecution's theory in rebuttal was that defendant was not as closely supervised as he asserted and could therefore leave work unnoticed for as long as necessary to commit the robbery. Thus, defendant's alibi defense made the question of whether defendant could leave work unnoticed a matter of consequence, and the fact that defendant was not closely supervised while at work was material. *Id*. at 388. Further, if defendant were able to sleep while at work, his doing so tends to show that he was not closely supervised. Because this makes the fact that he could leave unnoticed more probable, evidence of defendant's sleeping at work was also probative and admissible. *Id*. at 389-390.
>
> Defendant next argues that the prosecution presented evidence of defendant's sleeping at work to prove defendant's trait for disregarding work rules and that he acted in conformity with that trait. The record, however, does not indicate that this was character evidence. Rather, as previously explained, the prosecution presented evidence of defendant's sleeping at work to rebut defendant's alibi that he was at work at the time of the robbery.

\*     \*     \*

27

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  MRE 403.

Whether defendant was closely supervised at work was a crucial factor in this case. Defendant's alibi was premised on his assertion that he was at work and unable to leave for longer than ½ hour without his supervisor noticing.  Proof that he was not closely supervised and therefore had more flexibility to leave and return without notice brought his alibi into question.  Thus, the evidence was not unfairly prejudicial because it focused on a fact relevant to the case, not on something extraneous.  *See Fisher*, 449 Mich at 452 (observing that unfair prejudice under MRE 403 refers to the tendency of proposed evidence to adversely affect the objecting party's position by injecting matters extraneous to the merits of the case, such the jury's bias, sympathy, anger, or shock).

(Mich. Ct. App. Op., ECF No. 8-12, PageID.312-313, 315.)  The court concluded that because Petitioner's proposed objections to the evidence had no merit, it was not professionally unreasonable for counsel to forego the objections.  (*Id*., PageID.315.)

The state appellate court determined that each proposed objection had no merit.  It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions.  *Bradshaw*, 546 U.S. at 76; *Estelle*, 502 U.S. at 68.  Accordingly, the Michigan Court of Appeals determination that the proposed objections had no merit binds this Court.

Moreover, as noted above, the state court's conclusion that counsel is not required to raise meritless or futile objections to effectively assist his client is certainly consistent with the law of this circuit, *Richardson*, 941 F.3d at 857; see also *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial."), and is not inconsistent with clearly established federal law.  Therefore, Petitioner has failed to show that his counsel rendered ineffective assistance when he failed to raise the proposed objections.

28

## **Certificate of Appealability**

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, I have examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong. Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

29

**Recommended Disposition**

For the foregoing reasons, I recommend that the habeas corpus petition be denied.

I further recommend that a certificate of appealability be denied.  Finally, I recommend that the

Court not certify that an appeal would not be taken in good faith.


Dated:      June 8, 2020                                    /s/ *Maarten Vermaat*
                                                                          Maarten Vermaat
                                                                          United States Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).